**BABN TECHNOLOGIES
CORP., Plaintiff,**

v.

**Anthony BRUNO, Defendant.**

**Civil Action No. 98–3409.**

United States District Court,
E.D. Pennsylvania.

Nov. 10, 1998.

Mark J. Foley, Philadelphia, PA, for Plaintiff.

James J. Rodgers, Philadelphia, PA, for Defendant.

## MEMORANUM

LOWELL A. REED, Jr., District Judge.

Presently before the Court is the motion of defendant Anthony Bruno ("Bruno") to dismiss for lack of personal jurisdiction and for improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3) or in the alternative to transfer this action pursuant to 28 U.S.C. § 1404(a) (Document No. 6), and the response of plaintiff BABN Technologies Corporation ("BABN") thereto. For the reasons stated below, the motion will be denied.

### FACTS

BABN is in the business of producing lottery tickets. BABN hired Bruno in January 1995 as a Pre–Press Technician at BABN's facility in Fort Washington, Pennsylvania. Bruno was promoted to a Pre–Press Supervisor when he moved to BABN's new facility in San Antonio, Texas. Upon his hire at BABN, Bruno signed a Confidentiality Agreement[1] agreeing, *inter alia*, that Bruno would not engage in activities similar to BABN when an employee (or other position) for another company for a period of twelve months following termination of employment with BABN. This agreement further provided that any litigation arising from a breach of the agreement would be governed by the laws of Pennsylvania and that the parties consented to the exclusive jurisdiction of Pennsylvania courts. (Plt's Memorandum in Opposition to Defendant's Motion to Dismiss or Transfer, Exh. C).

Some time after his transfer to Texas, Bruno interviewed for other jobs. He was hired by Scientific Games, Incorporated ("SGI"), a direct competitor of BABN located in Georgia. Upon learning that Bruno was working for SGI, BABN filed a complaint and motion for special or preliminary injunction in the Court of Common Pleas, Montgomery County, Pennsylvania. The state court entered an order on July 1, 1998 temporarily enjoining Bruno from engaging in activities like he did at BABN with respect to lottery systems for twelve months and from disclosing trade secrets or any confidential information or proprietary materials of BABN. The state court order was to remain in until a hearing scheduled for July 7, 1998. Bruno removed this action to federal court

---

1. I refer, interchangeably, to the Confidentiality Agreement as the 'agreement' and 'non-compete clause.'

on July 2, 1998, and consequently, the state court hearing did not take place.

Shortly thereafter, this Court referred four motions to Magistrate Judge Angell for a hearing and Report and Recommendation (Document No. 5) pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules of Civil Procedure 72.1, I(d)(1)(A) and (2) and Federal Rule of Civil Procedure 72(b): (i) plaintiff's (unopposed) Motion for Leave to Take Expedited Discovery and Schedule a Hearing on Plaintiff's Motion for Preliminary Injunction (Document No. 2); (ii) defendant's (unopposed) Motion for Leave to Conduct Expedited Discovery (Document No. 7); (iii) defendant's Motion to Dissolve the Temporary Restraining Order (Document No. 3); and plaintiff's Motion to Continue Temporary Restraining Order until a Ruling Is Made on Plaintiff's Motion for a Preliminary Injunction (Document No. 10).

Magistrate Judge Angell conducted a hearing during two days, July 16, 1998 and July 22, 1998. Both parties were afforded the opportunity to present and cross-examine witnesses, submit evidence, and make arguments. On July 24, 1998, Magistrate Judge Angell issued a Report and Recommendation ("R & R"), which was amended on July 28, 1998 (Document No. 19). The R & R recommended that this Court "grant the unopposed motions for expedited discovery, dismiss the motions to extend and dissolve the state TRO, grant a TRO in favor of BABN restricting Bruno from working for SGI, and schedule a preliminary injunctive hearing." (R & R at 18).

Bruno filed timely objections in relation to the injunctive relief as well as additional evidence consisting of the supplemental affidavit of Gerald Glenn Cornetet. BABN filed a response to the objections as well as a motion to strike the supplemental affidavit. After careful and independent review of the entire record, this Court adopted the Report and Recommendation of Magistrate Judge Angell, with some modest modifications. (Document No. 29). Most notably, this Court construed the issue of injunctive relief as one for a preliminary injunction rather than for a TRO. (*Id.*)

## PERSONAL JURISDICTION

A federal district court "may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.,* 983 F.2d 551 (3d Cir.1993). Pennsylvania law provides that jurisdiction may be exercised if the parties give their consent. 42 Pa. Cons.Stat. Ann. § 5301(a). Thus, if the forum selection clause in the Confidentiality Agreement is valid, it will confer personal jurisdiction in this Court over Bruno. *Gandalf Sys. Corp. v. Tri–Tek Information Sys. & Serv.,* 1992 WL 172596 at *2 (E.D.Pa. July 13, 1992).

In federal court, "the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877 (3d Cir.1995). A forum selection clause is prima facie valid and should not be set aside unless the party challenging such a clause can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (considering enforceability of forum selection clause designating London Court of Justice as proper forum for disputes arising from a commercial shipping contract between an American corporation and a German corporation); *Spradlin v. Lear Siegler Management Serv.,* 926 F.2d 865, 867–68 (9th Cir.1991) (enforcement of forum selection clauses in employment contracts is mandatory, absent showing of fraud, undue influence, overreaching, excessive bargaining power, or such serious inconvenience in litigating in selected forum as to deprive party seeking to avoid enforcement of meaningful day in court).

Here, there is no evidence of coercion and Bruno does not contend that the clause was a product of fraud. The forum selection clause is written in plain English and is located in uniform type directly above Bruno's signature line in the agreement. *Goodman v. Hill–Rom Co., Inc.,* 1996 WL 685840

(M.D.Fla. Nov.25, 1996) (forum selection clause enforceable where written in plain English in employment agreement). Furthermore, the forum selection clause contained in the agreement is not unreasonable or unfair as to its choice of Pennsylvania courts for the litigation of disputes between BABN and Bruno. There is no evidence that the inclusion of Pennsylvania fora was an attempt to gain an unfair advantage by including a forum which was not connected to the parties' relationship. On the contrary, BABN was based in Fort Washington, Pennsylvania, and Bruno lived and was working for BABN in Pennsylvania at the time the agreement was executed. Thus, there is no evidence that BABN acted in bad faith, unreasonably or unfairly by including the forum selection clause in the Confidentiality Agreement. *See Gandalf,* 1992 WL 172596 at *3 (forum selection clause requiring disputes be litigated in Pennsylvania reasonable where entered into in Pennsylvania and plaintiff was Pennsylvania corporation).

Nevertheless, Bruno argues that the forum selection clause is unenforceable because: (1) the inherent disparity of bargaining power between an employer and employee; (2) the clause was in a form contract and was not negotiated. In so doing, Bruno relies heavily on a recent case from the Middle District of Pennsylvania which held that a forum selection clause between an employer and employee is unenforceable because of the inherent disparity of bargaining power. *Dentsply Int'l, Inc. v. Benton,* 965 F.Supp. 574, 579 (M.D.Pa.1997).

In an earlier decision, I have already ruled that the choice of law provision is enforceable and that Pennsylvania law governs. Memorandum of August 28, 1998 (Document No. 29), cited at *BABN Technologies Corp. v. Bruno,* Civ. No. 98–3409, 1998 WL 720171 at *4–5 (E.D.Pa. Sept.2, 1998). I now adopt my earlier reasoning with respect to the forum selection clause. I again distinguish this case from *Dentsply* on two vital grounds:

(i) unlike the plaintiff in *Dentsply* who was asked to sign a noncompete covenant and choice of [forum] provision in the midst of this employment (after three years of employment), Bruno signed the agreement at the beginning of his employment when consideration for the agreement was patent; and (ii) in *Dentsply,* the choice of law provision and forum selection clause were centered in Pennsylvania despite the fact that the plaintiff worked in Oklahoma and never even visited Pennsylvania on business, whereas, in our case, Bruno was hired in Pennsylvania, signed the employment agreement in Pennsylvania, and worked (and presumably learned some of the details of his employer's operations) in Pennsylvania before his promotion and transfer to Texas a year later.

*Id.* at *5. Accordingly, I again decline to follow the holding of *Dentsply* because the employment agreement here (with the choice of law/forum selection clause) was executed in the beginning of the employment relationship, there is no showing of coercive conduct on the part of the employer with respect to the signing of the agreement, and the choice of forum is consistent with the employee's place of hire and work, and the location where the agreement was made. *Id.; see also Spradlin,* 926 F.2d at 867–69.

In addition, the mere fact that Bruno signed a form contract and did not negotiate the forum selection clause is not sufficient to render the clause unenforceable. *Gandalf,* 1992 WL 172596 at * 2–3. Notably, Bruno does not offer any evidence that he was unaware of the forum selection clause when he signed the contract, or that he could not have negotiated its terms or that he tried to negotiate its terms. There is simply no evidence, other than the bald assertion that BABN is Bruno's employer, that the provision was the product of fraud, undue influence, overreaching, or overweening bargaining power; nor is there evidence that litigating in Pennsylvania would be of such serious inconvenience as to deprive Bruno of meaningful day in court.[2]

---

**2.** Moreover, Bruno has had sufficient contact with Pennsylvania that this Court may exercise specific jurisdiction in this case. Specific jurisdiction exists only where the defendant has suffi-

cient minimum contact with the forum state "such that [a defendant] should reasonably anticipate being haled into court [in the forum state]." *World–Wide Volkswagen Corp. v. Woodson,* 444

## VENUE

Bruno next argues that this case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. Venue is defined by statute at 28 U.S.C. § 1391 which sets forth where venue may properly be laid. BABN premises venue in this district under § 1391(a)(2) which provides that venue is proper in a diversity action, if the action is filed in "a judicial district where a substantial part of the events of omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(a)(2). Under the current formulation, venue may be proper in more than one federal district in a given case. *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y.1994). In addition, a court must look at the nature of the dispute to determine whether an act or omission giving rise to the claim is substantial. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir.1994).

In this case, some of the same facts that establish personal jurisdiction also establish

U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The "constitutional touchstone" is whether the defendant purposefully established those minimum contacts. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.) (quoting *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174), *cert denied*, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). A defendant should not be subjected to a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Specific personal jurisdiction arises from a defendant's activities in the forum state that relate to the cause of action being litigated. *See id.* at 472–73, 105 S.Ct. 2174.

Clearly Bruno "purposefully availed" himself of the protections and benefits of the laws of Pennsylvania when he entered into an employment agreement here in January 1995. Moreover, he worked for BABN and lived in Pennsylvania for almost three years. Secondly, the claim against him arose directly from the employment agreement he signed in Pennsylvania containing the non-compete clause and the alleged acquisition of trade secrets and propriety and confidential information during his employment in Pennsylvania. Thirdly, Bruno's contacts with Pennsylvania are of a substantial enough quality to make the exercise of jurisdiction reasonable. The agreement which forms the basis for this case was executed in Pennsylvania. This is not a situation where Bruno is being subjected to a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Moreover, because the employment contract expressly provided that disputes between the parties be litigated in this Court, Bruno cannot claim that he could not have foreseen being haled into court here. *Id.* at 473–74, 105 S.Ct. 2174.

Nevertheless, Bruno correctly asserts that where minimum contacts are shown so as to satisfy specific jurisdiction, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. These factors include: "(1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective re-

lief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Database America v. Bellsouth Advertising & Pub. Inc.*, 825 F.Supp. 1195, 1212 (D.N.J.1993) (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). However, the burden on the defendant who wishes to show an absence of fairness or lack of substantial justice is heavy. *Grand Entertainment Group v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993). "When minimum contacts have been established, often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the ... defendant." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Accordingly, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment Group*, 988 F.2d at 483 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

Applying these factors to Bruno, I find that exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Jefferson v. Priority Records*, 1998 WL 692958 at *4 (E.D.Pa. Sept.30, 1998) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Although Pennsylvania is not the most convenient forum for Mr. Bruno, he was on fair notice that any disputes arising from his employment contract would be litigated in Pennsylvania. Similarly, Pennsylvania law applies by virtue of the choice of law provisions in the contract. Also, Pennsylvania has a substantive interest in preserving the sanctity of contracts which are executed in the Commonwealth. In addition, the exercise of personal jurisdiction is consistent with the plaintiff's interest in obtaining convenient and effective relief. Finally, exercising personal jurisdiction in Pennsylvania will not hinder the interest of the several states in furthering fundamental substantive social policies. I therefore conclude that Bruno has not met his burden of showing that defending himself in Pennsylvania would be so unreasonable as to deprive him of constitutional notions of fair play and substantial justice.

that venue is proper in this District. *Hardee's Food Sys., Inc. v. Beardmore,* 169 F.R.D. 311, 316 (E.D.N.C.1996); *Sacody Technologies,* 862 F.Supp. at 1157. The agreement between Bruno and BABN was executed and took effect in Pennsylvania. The alleged acquisition of trade secrets and propriety and confidential information allegedly occurred, in large part, during Bruno's employment in Pennsylvania. Moreover, it is Bruno's alleged breach of the non-compete provision in his employment contract and the alleged sharing of proprietary and confidential information with his new employer that lies at the heart of BABN's claims. *See Hardee's Food,* at 317 (venue in breach of contract claim proper in forum where royalty fee was to be sent and where licensing agreement was executed). Accordingly, I find that BABN has sufficiently alleged that "a substantial part" of the events giving rise to its claims "occurred" within Pennsylvania. *Sacody Technologies,* 862 F.Supp. at 1157 (holding venue requirements satisfied by receipt of correspondence and telephone calls in forum district even though conduct constituting "breach" of Confidentiality Agreement occurred outside of forum state). Thus, venue is proper and the motion to dismiss for improper venue will be denied.

### TRANSFER

Bruno argues in the alternative that this action should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of establishing the need for a transfer rests with the movant. *Jumara,* 55 F.3d at 879. In ruling on § 1404(a) motions, courts should not limit their consideration to the three enumerated factors (convenience of parties, convenience of witnesses, or interest of justice), but "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* (quoting 15 WRIGHT, MILLER & COOPER § 3847). Among the factors to be considered are: 1) plaintiff's choice of forum; 2) defendant's preference; 3) where the claim arose; 4) convenience to the parties; 5) convenience to witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; 6) location of books and records; 7) practical considerations that could make the trial easier, more expeditious, or less expensive; 8) congestion of the possible fora; and 9) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80.

Within this framework, a forum selection clause is treated as a manifestation of the parties preferences as to a convenient forum. *Id.* at 880. Although not dispositive, a valid forum selection clause is entitled to substantial weight. *Id.* Thus, where a forum selection clause is free from fraud, influence, or overweening bargaining power, the movant bears the burden of demonstrating why he or she should not be bound by his or her contractual choice of forum. *Id.*

Applying these principles to the instant case, this Court cannot find that Bruno has met his burden of showing that transfer of this case to the Northern District of Georgia will best serve the interests of convenience and justice. In this case, the parties have manifested their intention that an action between them should be determined by this Court by including a forum selection clause in the employment agreement and that Pennsylvania law would apply. Moreover, at the time of the formation both parties had significant contacts with the state. *Gandalf,* 1992 WL 172596 at *4. In addition, Pennsylvania has an interest in enforcing the validly entered employment agreements. Also, a court in Pennsylvania will be more familiar with Pennsylvania law than a court in Georgia. Furthermore, the books and records relating to the claims of BABN, including Defendant's employment records and documents pertaining to BABN's trade secrets and confidential and proprietary information can be produced in Pennsylvania just as easily as in Georgia. Additionally, Bruno has not identified any witnesses or demonstrative proof that will only be available conveniently in the

Northern District of Georgia. *See Vipond v. Consolidated Rail Corp.*, 1994 WL 534808 at *2 (denying motion to transfer, in part, because defendant failed to meet its burden in specifying the key witnesses to be called); *PPG Industries, Inc. v. Systonetics, Inc.*, 614 F.Supp. 1161, 1164 (W.D.Pa.1985) (finding that defendant should "make the necessary statements concerning what their [the witnesses] testimony will cover or demonstrate the materiality of such evidence such that this Court may properly balance the parties' interests"). Finally, although Pennsylvania is admittedly inconvenient for Bruno, he does not gain anything by attempting to tie his position to the inconvenience of his current employer located in Georgia. As BABN has pointed out, Bruno's present employer is not a party to this lawsuit.

I have already found that the forum selection clause is valid. The clause not only vests jurisdiction in Pennsylvania courts, but venue as well. *Gandalf,* 1992 WL 172596 at *5. Because Bruno has not shown that the balance of convenience weights heavily in its favor and because I find that the forum selection clause weighs heavily in favor of maintaining the action here, I will not transfer this action. "A party can.seek to rescind a forum selection clause, as the [defendant has] sought to do here, but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it." *Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 378 (7th Cir. 1990). Bruno may not use section 1404(a) to circumvent the valid and enforceable forum selection clause.

## CONCLUSION

For the foregoing reasons, the motion of Bruno to dismiss or to change venue is denied.